IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| ANDRE LINDSAY, | |
|     Petitioner, | CIVIL ACTION NO.: 5:23-cv-74 |
| v. | |
| MERRICK GARLAND, | |
|     Respondent. | |

### REPORT AND RECOMMENDATION

Petitioner Andre Lindsay ("Lindsay"), who is currently housed at the Folkston Immigration and Customs Enforcement ("ICE") Processing Center in Folkston, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus.  Doc. 1.  Respondent filed a Motion to Dismiss, and Lindsay filed a Response.  Docs. 8, 11.  For the reasons which follow, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DENY** Lindsay's § 2241 Petition, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Lindsay *in forma pauperis* status on appeal.

### BACKGROUND

Lindsay is a citizen and national of Jamaica and came to the United States as a lawful permanent resident in 1982.  Doc. 8 at 1–2.  In 1996, Lindsay was convicted of possession of crack cocaine in South Carolina and was sentenced to one year in prison.  In 1997, Lindsay was again convicted of possession of crack cocaine in South Carolina and for strong armed robbery and was sentenced to two years' imprisonment on the drug charge and to four years'

imprisonment on the robbery charge.  Id. at 2.  Lindsay was convicted in September 2001 of conspiracy with intent to distribute crack cocaine and was sentenced to 210 months in prison.

The Department of Homeland Security ("DHS") issued a notice to appear on November 8, 2022, and charged Lindsay as removeable due to his convictions for aggravated felonies and controlled substances.  Lindsay began his ICE detention on November 9, 2022.  Id.  Lindsay had bond determination hearings on January 2023 and June 2023, and the immigration judge determined each time Lindsay was subject to mandatory detention under 8 U.S.C. § 1226(a)(2)(A)(iii).  Id. at 3.  Lindsay filed a third motion for bond redetermination and a Matter of Joseph hearing.  The immigration judge found Lindsay had not met his burden under Joseph and his criminal offenses did include aggravated felonies, subjecting him to mandatory detention under § 1226(c).  Id. at 3–4.  Lindsay filed this Petition on August 2, 2023.  Doc. 1.  On September 14, 2023, the immigration court ordered Lindsay removed to his native country of Jamaica.  Doc. 8 at 4.

In his Petition, Lindsay states he is being detained without having had an opportunity to contest his designation as a deportable alien in removal proceedings and should not be subject to mandatory detention.  Doc. 1 at 1, 10.  Lindsay also states his continued detention is unlawful because there was a gap between his release on criminal charges and DHS confinement.  Id. at 4.  Lindsay further states he did not receive a fair Joseph hearing.  Id. at 10.

Respondent asserts Lindsay's mandatory detention determination is not subject to judicial review.  Doc. 8 at 5.  In addition, Respondent contends Lindsay's detention is lawful and his due process rights have not been violated.  Id. at 6, 8.

**DISCUSSION**

**I.      Lindsay's Challenge to Mandatory Detention Is Not Subject to Judicial Review**

Lindsay states his mandatory detention is not authorized under § 1226(c).  Doc. 1 at 1.  Respondent notes the immigration judge's determination is discretionary and is not subject to judicial review under § 1226(e).  Doc. 8 at 5.

Section 236(c) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c), provides the Attorney General "shall take into custody any alien who—is deportable by reason of having committed any offense" involving moral turpitude or an aggravated felony, as defined in 8 U.S.C. § 1227(a)(2)(A)(ii) and (iii).  The Attorney General may detain the alien or release the alien on bond or conditional parole.  § 1226(a).  In addition,

> The Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review.  No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

28 U.S.C. § 1226(e).  In other words, "§ 1226(e) precludes an alien from 'challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release.'"  Jennings v. Rodriguez, 583 U.S. 281, 295 (2018) (quoting Demore v. Kim, 538 U.S. 510, 516 (2003)).  In cases where an alien is detained, he can seek review of that detention with DHS and then by an immigration judge and can "secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community."  Nielsen v. Preap, 139 S. Ct. 954, 960 (2019) (citing 8 C.F.R. §§ 236.1(c)(8), (d)(1), 1003.19(a), 1236.1(d); then citing Matter of Guerra, 24 I. & N. Dec. 37 (BIA 2006))).

"Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal

3

proceedings.  Section 1226(a) also permits the Attorney General to release those aliens on bond, '[e]xcept as provided in subsection (c) of this section.'"  Jennings, 583 U.S. at 303.  Section 1226(c) in turn states the Attorney General "shall take into custody any alien" who falls into one of the enumerated categories involving criminal offenses and terrorist activities.  8 U.S.C. § 1226(c)(1).  Section 1226(c) specifies the Attorney General "may release" one of those aliens "only if the Attorney General decides" both doing so is necessary for witness-protection purposes and the alien will not pose a danger or flight risk.  8 U.S.C. § 1226(c)(2).  Section 1226(c) does not on its face limit the length of the detention it authorizes.  "In fact, by allowing aliens to be released 'only if' the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute.  And together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope must continue 'pending a decision on whether the alien is to be removed from the United States.'"  Jennings, 583 U.S. at 303 (quoting § 1226(a)).  This mandatory detention under § 1226(c) "does not violate the due process rights of criminal aliens who have conceded their deportability and are being detained for the limited period of their removal proceedings."  Lukaj v. McAleenan, Case No. 3:19-cv-241, 2019 WL 4979745, at *3 (M.D. Fla. Oct. 8, 2019) (citing Demore, 538 U.S. at 513).

Lindsay is a native and citizen of Jamaica who became a lawful permanent resident in 1982 as an unmarried child of an alien resident and is being detained under § 1226(c).  Doc. 8-1 at 2, 6–7.  ICE officials served him with a notice to appear on November 8, 2022, charging Lindsay as removable under four counts of 8 U.S.C. § 1237(a)(2)(A)(iii) and (B)(i) for having committed an aggravated felony.  Id. at 2.  The immigration judge determined Lindsay had

4

committed at least one aggravated felony and a controlled substance offense on bond redetermination. Thus, Lindsay is subject to mandatory detention under § 1226(c). Id. at 6–7. And Lindsay's contention the Joseph hearing was not fair does not serve as an end around § 1226(c)'s mandatory detention determination or § 1226(e)'s preclusive effect on judicial review.[1]

The immigration judge's § 1226(c) bond decision was within the discretion afforded under § 1226, and this Court cannot review this decision under § 1226(e). The Court should **GRANT** this portion of Respondent's Motion to Dismiss and **DENY** this ground of Lindsay's Petition based on § 1226.

## II.     DHS Has Authority to Detain Lindsay

Lindsay contends he should not be subject to mandatory detention because there is a gap of time between his release from prison on the drug offense and his detention in an ICE facility. Doc. 1 at 4. Respondent correctly notes the Nielsen decision precludes Lindsay's claim. Doc. 8 at 7–8.

In Nielsen, the Supreme Court determined § 1226(c)'s mandatory detention applies "to any alien linked with a predicate offense . . . regardless of exactly when or even whether the alien was released from criminal custody." 130 S. Ct. at 972. While the Eleventh Circuit Court

---

[1] Detainees who are classified as removeable are entitled to a hearing to determine whether the Department of Homeland Security ("DHS") is substantially unlikely to show the detainee's convictions fall within a category of offenses requiring mandatory detention; the detainee has the burden of proof. Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999). The immigration judge held a Joseph hearing on June 29, 2023, and determined Lindsay is subject to mandatory detention under § 1226(c) because he had been convicted of an aggravated felony. Doc. 8-1 at 6–8. Lindsay states his Joseph hearing was not "fair" and was not scheduled "immediately" after requested. Doc. 1 at 10. Based on the record before the Court, the Joseph hearing was held nine days after Lindsay requested it. Doc. 8-1 at 6. Lindsay points to nothing indicating when "immediately" after the request would be or if Joseph has time requirements. Lindsay also fails to state how the Joseph hearing was not "fair," aside from the allegation the hearing should have occurred sooner.

of Appeals has not considered this issue, a court in this Circuit has been "persuaded by the reasoning set forth by the Second, Third, Fourth, and Tenth Circuits" and has concluded "§ 1226(c) applies even when the Government does not detain the alien immediately after his release from custody." Khan v. Whiddon, No. 2:13-cv-638, 2016 WL 4666513, at *4 (M.D. Fla. Sept. 7, 2016) (citing Lora v. Shanahan, 804 F.3d 601, 613 (2d Cir. 2015);[2] Olmos v. Holder, 780 F.3d 1313, 1324 (10th Cir. 2015); Sylvain v. Att'y Gen. of the United States, 714 F.3d 150, 156–57 (3d Cir. 2013); Hosh v. Lucero, 680 F.3d 375, 381 (4th Cir. 2012)); see also Gjergji v. Johnson, No. 3:15-CV-1217, 2016 WL 3552718, at *3 (M.D. Fla. June 30, 2016) (same).

The Court should **GRANT** this portion of Respondent's Motion and **DENY** this portion of Lindsay's Petition.

### III.     The Sopo Factors Do Not Favor Lindsay

Lindsay contends his continued detention is governed by § 1226(a), which entitles him to a bond hearing pending his removal. Doc. 1 at 11. Additionally, Lindsay claims his continued detention without a bond hearing violates the Due Process Clause. Id. Respondent states Lindsay has been afforded process and has not met his burden of showing his detention violates his due process rights. Doc. 8 at 8–15.

As noted, § 1226 governs detention of certain aliens during removal proceedings. Jennings, 583 U.S. at 287–88. Section 1226(a) sets out the default rule, which permits, but does not require, the Attorney General to detain an individual while removal proceedings are ongoing. Id. Section 1226(c), however, "carves out a statutory category of aliens who may *not* be released under § 1226(a)." Id. at 289 (emphasis in original). Specifically, § 1226(c) provides the

---

[2]     Lindsay's citation to Lora v. Shanahan (and other cases) is misplaced, as the Second Circuit Court of Appeals determined "an alien may be subject to mandatory detention even where DHS does not immediately detain the alien after release from criminal custody." 804 F.3d 601, 613 (2d Cir. 2015).

6

Attorney General "shall take into custody any alien" who falls into certain categories of criminal offenses. Thus, § 1226(a) provides for discretionary detention for aliens until removal proceedings are complete (as long as certain conditions are met), but § 1226(c) eliminates that discretion and imposes mandatory detention for certain aliens, in particular aliens who committed offenses involving moral turpitude. Section 1226(c) does not on its face set a time limit on the length of detention, but, instead, requires aliens be held until a final removal decision has been made.

> In fact, by allowing aliens to be released "only if" the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute. And together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope must continue "pending a decision on whether the alien is to be removed from the United States."

Id. at 303 (quoting § 1226(a)).

The record in this case demonstrates the immigration judge determined Lindsay was subject to mandatory detention under § 1226(c) due to his prior convictions. Lindsay had an initial bond determination hearing on January 19, 2023, and the immigration court denied his request for bond because Lindsay was subject to mandatory detention. Doc. 8-1 at 6. Lindsay had a bond redetermination hearing on June 13, 2023, and his request was again denied based on his failure to present any material change in circumstance since the January 2023 hearing. Id. The immigration court held another hearing in June 29, 2023, and denied Lindsay's request for bond because he did not show any change in circumstance since the earlier June 2023 hearing and because he was subject to mandatory detention under § 1226(c) for committing an aggravated felony. Id. The BIA upheld the immigration judge's finding. Id. at 13. On September 14, 2023, Lindsay was ordered removed to Jamaica. Id. at 18.

To the extent Lindsay asserts a facial due process challenge based on the length of his detention (i.e., a challenge to the statutory framework permitting his detention in this case), that challenge fails as a matter of law, as the Supreme Court has explicitly rejected any facial constitutional challenge based the duration or indefiniteness of detention under § 1226(a) and § 1226(c). Jennings, 583 U.S. at 296–313. Furthermore, to the extent Lindsay seeks to challenge any discretionary decision by an immigration judge related to his detention, he cannot do so here or at this time, given the limits of §§ 1226(e) and 1252(b)(9). Id.

However, Lindsay challenges the length of detention as violative of his right to procedural due process. It is well established aliens present in the United States are entitled to Fifth Amendment due process protections in deportation proceedings. Reno v. Flores, 507 U.S. 292, 306 (1993). The United States Supreme Court has also recognized, however, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." Demore v. Kim, 538 U.S. 510, 523 (2003). By statute, any alien who is inadmissible or deportable by reason of having committed certain enumerated criminal offenses after the alien has been released from criminal incarceration must be taken into and held in custody. 8 U.S.C. § 1226(c). In Demore, the Supreme Court held § 1226(c) does not—on its face—violate the due process rights of criminal aliens who are detained for the limited period of their removal proceedings. 538 U.S. at 513. However, the Court left open the possibility of as-applied procedural due process challenges to § 1226(c) detention, where continued detention becomes unreasonable or unjustified. Id. at 531–33 (Kennedy, J., concurring).

In the years since Demore, many courts construed § 1226(c) as authorizing detention only for a "reasonable" amount time, so as to avoid resolving the constitutional challenges presented by extended § 1226(c) detention. See Sopo v. U.S. Att'y Gen., 825 F.3d 1199, 1213–14 (11th

Cir. 2016) (Sopo I) (collecting cases and adopting similar construction of § 1226(c)), vacated on other grounds, 890 F.3d 952 (11th Cir. 2018).  However, in Jennings, the Supreme Court rejected this construction of § 1226(c), recognizing the statute requires mandatory detention of certain aliens until the conclusion of their removal proceedings and the provision cannot be construed to impose a "reasonableness" limitation.  583 U.S. at 298.  But, again, the Court left open the possibility of as-applied procedural due process challenges to § 1226(c) detention, particularly where the petitioner alleges the detention has become unreasonably prolonged.

To determine if a procedural due process violation has occurred, courts must determine whether a petitioner was deprived of a protected interest, and, if so, whether constitutionally adequate due process was afforded.  See Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982); Bank of Jackson Cnty. v. Cherry, 980 F.2d 1362, 1366 (11th Cir. 1993).  As for others protected by the Due Process Clause, for aliens involved in removal proceedings, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  Zadvydas v. Davis, 533 U.S. 678, 690 (2001).  Lindsay has plainly established a deprivation of his freedom from confinement.  Therefore, to resolve Lindsay's Petition, the Court must determine whether he was afforded constitutionally adequate due process.

As noted above, § 1226(c) has been held to be facially constitutional, see generally Demore, and courts have deemed detention under that provision constitutional so long as the detention is justified and not unreasonably prolonged.  Lindsay does dispute whether he is validly subject to § 1226(c) detention based on his criminal history, though he seems to recognize this currently is the basis for his detention.  Lindsay contends the detention has been unreasonably prolonged.  Courts in the Eleventh Circuit confronted with procedural due process

9

challenges to prolonged detention under § 1226(c) have looked to Sopo I for guidance on evaluating the challenges.  See Lukaj v. McAleenan, Case No. 3:19-cv-241, 2019 WL 4979745, at *6 (M.D. Fla. Oct. 8, 2019), vacated on other grounds, 2020 WL 248724 (M.D. Fla. Jan. 16, 2020); Moore v. Nielsen, No. 418CV01722, 2019 WL 2152582, at *10 (N.D. Ala. May 3, 2019).  Those courts consider the reasoning of Sopo I concerning statutory construction of § 1226(c) and recognize the constitutional avoidance doctrine was rejected by the Supreme Court in Jennings and the opinion in Sopo I was later vacated by the Eleventh Circuit.  Those courts also recognize the analysis in Sopo I concerning prolonged § 1226(c) detention remains persuasive and is particularly instructive when assessing the constitutionality of prolonged § 1226(c) detention.  Lukaj, 2019 WL 4979745, at *6 (recognizing while "vacated opinions are void and have no legal effect[,]" "they can still have persuasive value"); Moore, 2019 WL 2152582, at *10 ("In assessing the constitutional avoidance doctrine, the Eleventh Circuit affirmatively answered the due process question in [Sopo I].").  The undersigned agrees.  In applying the constitutional avoidance doctrine in Sopo I, the Eleventh Circuit construed § 1226(c) to include a limit that avoided unconstitutional application of the statute.  The same analysis is highly instructive for determining if prolonged detention under § 1226(c) does, in fact, violate a petitioner's right to procedural due process.

In Sopo I, the Eleventh Circuit explained it is appropriate to use a case-by-case approach to determine whether an alien's detention under § 1226 is reasonable (as opposed to adopting any sort of bright-line rule concerning the length of the petitioner's detention).  825 F.3d at 1215.  In conducting the case-by-case evaluation, a court should consider, among other things: (1) the amount of time the alien has been in detention without a bond hearing; (2) the cause of the protracted removal proceedings (i.e., whether the petitioner or the government has improperly

10

delayed the proceedings); (3) whether it will be possible to remove the alien upon the issuance of a final order of removal; (4) whether the period of civil immigration detention exceeds the time the alien spent in prison for the crime that rendered the alien removable; (5) whether the facility at which the alien is civilly detained is meaningfully different from a penal institution; and (6) the likelihood the removal proceedings will conclude in the near future. Id. at 1217–18. The Court addresses each factor, as applied to Lindsay's case.

### A. Lindsay's Detention Without a Bond Hearing

Regarding the first factor—the length of detention without a bond hearing—the Eleventh Circuit noted § 1226(c) detention without a bond hearing is likely reasonable for up to six months but "may often become unreasonable by the one year mark, depending on the facts of the case." Id. at 1218. Critically, the Eleventh Circuit explained in the context of prolonged § 1226(c) detention, procedural due process does not require automatic release of a criminal alien once the detention is unreasonably prolonged but, instead, requires the government to afford the alien an individualized bond inquiry. Id.

At the time of filing his Petition on August 2, 2023, Lindsay had been in ICE's custody since November 2022. However, he had had three bond determination hearings in that time. Doc. 8-1. In addition, Lindsay's appeal of the immigration judge's July 17, 2023 decision on the Joseph and bond redetermination matters was not decided until September 15, 2023. Id. at 9, 13. At the time Lindsay filed his Petition, Lindsay's detention without a bond determination hearing had not exceeded—or even approached—a year's time. Even as of the date of this Report, the time has not reached one year. Lindsay's detention pending removal is presumptively reasonable at this point, and this factor weighs in Respondent's favor.

B.     **Delay in Proceedings**

At the time Respondent file his Motion to Dismiss, Lindsay had not filed an appeal on the removability order. Doc. 8 at 11. The Court has no information regarding whether Lindsay did appeal the order of removability since the Motion to Dismiss was filed. Available information merely indicates Lindsay is still detained. https://locator.ice.gov/odls/#/results, search for "Andre Lindsay" and "Jamaica," and showing Lindsay is still housed at the Folkston ICE Facility (last visited Apr. 30, 2024). Nothing in the record suggests any delay in Lindsay's removal is due to improper delay tactics or anything other than Lindsay's legitimate pursuit of available remedies. This factor is neutral or weighs in Respondent's favor.

C.     **Possibility of Removal**

Respondent states Lindsay should be removed to Jamaica as soon as possible once his removal order is final, as detainees are removed to Jamaica on a regular, monthly basis to Jamaica. Doc. 8 at 12–13; Doc. 8-1 at 2. Lindsay presents nothing to the contrary. This factor weighs in Respondent's favor.

D.     **Length of Civil Detention Relative to Length of Criminal Incarceration**

This factor weighs in Respondent's favor. Even though Respondent could not determine the length of Lindsay's detention in penal institutions, he states Lindsay received several sentences, all of which resulted in sentences totaling more than a year. Doc. 8 at 13. Lindsay points to no evidence to the contrary.

E.     **Facility Conditions**

Lindsay makes no contention and offers no evidence to indicate the conditions at the Folkston ICE Facility are materially different or worse than any penal institution in which he served criminal sentences. I find this factor to be neutral or weighs in Respondent's favor.

### F.  Likelihood of Removal Proceedings Concluding In Near Future

There is nothing before the Court indicating there is even a reasonable likelihood Lindsay's removal proceedings will not conclude in the near future.  The record before the Court reveals Lindsay has gone from detention to on the cusp of removal to Jamaica in just over a year's time, which is a relatively speedy process, in the Court's experience.  Thus, I find this factor also weighs in Respondent's favor.

On balance, the Sopo I factors indicate Lindsay has not shown his due process rights have been violated by the length of detention in ICE's custody.  Nor has Lindsay shown he has not been afforded bond determination hearings.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DENY** Lindsay's § 2241 Petition, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Lindsay *in forma pauperis* status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein.  Objections not meeting the specificity requirement set out above will not be considered by the District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 30th day of April, 2024.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA